IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| MSSI, INC., <br><br> Plaintiff, <br><br> v. <br><br> J.E. DUNN CONSTRUCTION COMPANY, DLR GROUP, INC., FEDERAL INSURANCE COMPANY, TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA, and HARTFORD FIRE INSURANCE COMPANY, <br><br> Defendants. | 8:23CV45 <br><br> MEMORANDUM AND ORDER |

Defendant J.E. Dunn Construction Company ("J.E. Dunn") was the general contractor for the construction of a new correctional facility in Sarpy County, Nebraska (the "project"). Defendant DLR Group, Inc. ("DLR Group") was the designer and engineer. Cornerstone Detention Products, Inc. ("Cornerstone"), a subcontractor for the project, hired plaintiff MSSI, Inc. ("MSSI") to furnish jail cells for the project.

Nebraska law[1] requires those responsible for public projects to secure, furnish, and ensure a payment bond for the full project contract price to guarantee payment to all laborers on the project. *See* Neb. Rev. Stat. § 52-118. Thus, J.E. Dunn secured and executed a payment bond for $267,000 (the "Payment Bond") with defendants Federal Insurance Company ("Federal"), Travelers Casualty and Surety Company of America ("Travelers"), and Hartford Fire Insurance Company ("Hartford"), serving as the sureties.

---

[1] The parties appear to agree that Nebraska substantive law applies in this diversity action. *Rose v. Midland Nat'l Life Ins. Co.*, 954 F.3d 1117, 1119 (8th Cir. 2020) (citing *Chew v. Am. Greetings Corp.*, 754 F.3d 632, 635 (8th Cir. 2014)) (explaining that federal courts should apply substantive law of the forum state in diversity cases).

Plaintiff MSSI originally filed a lawsuit against J.E. Dunn, DLR Group, Cornerstone, Federal, Travelers, and Hartford. MSSI filed a First Amended Complaint on March 15, 2023, and dismissed Cornerstone to create complete diversity.[2] The Court now has diversity jurisdiction over this case. *See* 28 U.S.C. § 1332(a).

Now before the Court are two motions (Filing No. 41 and 44) to dismiss MSSI's First Amended Complaint (Filing No. 36). *See* Fed. R. Civ. P. 12(b)(6). DLR Group and J.E. Dunn each move to dismiss the complaint for failure to state a claim upon which the relief requested may be granted. For the following reasons, both motions are granted.

## I. BACKGROUND[3]

In March 2021, Cornerstone hired MSSI with J.E. Dunn and DLR Group's consent to furnish approximately 82 prefabricated jail cells for the project for $1,927,517. During the project, MSSI also performed additional work ("additional work") at Cornerstone's request, totaling $21,339.

MSSI alleges it performed its work but was not fully paid despite properly requesting payment from Cornerstone between December 2021 to January 2022. MSSI demanded payment multiple times. Failing to receive payment, "MSSI made numerous demands upon J.E. Dunn and DLR Group for the Payment Bond and the identity and contact information of the sureties so MSSI could pursue its rights under the Payment Bond and Nebraska law." J.E. Dunn and DLR Group "ignored and/or refused MSSI's demands for the Payment Bond and identity of the sureties for nearly a year."

MSSI asserts three causes of action in its First Amended Complaint. The first seeks "to recover the full $267,300 Payment Bond amount, plus attorney fees" against J.E. Dunn, Federal, Travelers, and Hartford. The second claims "tortious interference" by J.E. Dunn

---

[2]Federal, Travelers, and Hartford have answered the First Amended Complaint (Filing No. 43).
[3]The following facts are drawn primarily from MSSI's First Amended Complaint.

and DLR Group, and the third claims "breach of fiduciary duty" against J.E. Dunn and DLR Group.

J.E. Dunn and DLR Group now separately move to dismiss MSSI's First Amended Complaint in its entirety as to them, arguing they have not alleged sufficient facts for this Court to draw reasonable inference that the defendants are liable for the claims alleged.

## II. DISCUSSION

### A. Legal Standard

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Rule 12(b)(6) allows a defendant to move to dismiss a claim when the plaintiff has failed "to state a claim upon which relief can be granted."

When ruling on a motion to dismiss, the Court must accept "as true all factual allegations in the complaint and draw all reasonable inferences in favor of the nonmoving party." *McDonough v. Anoka County*, 799 F.3d 931, 945 (8th Cir. 2015). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[F]actual allegations must be enough to raise a right to relief above the speculative level," and the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 545. "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*. at 555.

### B. Payment-Bond Claim Against J.E. Dunn

MSSI asserts a claim for amount of the Payment Bond and attorney fees against J.E. Dunn, Federal, Travelers, and Hartford. MSSI and J.E. Dunn appear to agree that J.E. Dunn obtained the Payment Bond for the project, and that MSSI was a "subcontractor"

3

under § 52-118.01. MSSI alleges four new substantive points against J.E. Dunn in its first amended complaint that J.E. Dunn bound itself "to the terms of the Payment Bond," and MSSI has "satisfied all prerequisites to file suit on the Payment Bond" for their work. J.E. Dunn "ignored MSSI's notice of claim." MSSI is thus "entitled to recover the full $267,300 Payment Bond amount." But MSSI has failed to allege a credible theory on how J.E. Dunn is responsible for the payments under the Payment Bond under Nebraska law. MSSI's allegation that J.E. Dunn is responsible for the Payment Bond is cursory and sparse when it simply alleges "J.E. Dunn. . . bound themselves . . . to the terms of the Payment Bond."

In MSSI's response brief (Filing No. 48), they attempted to explain that J.E. Dunn "bound themselves" "to the terms of the Payment Bond" because § 52-118 imposes duties upon the general contractor regarding payment bonds by the language "[t]he bond or bonds referred to in subsection (1) of this section may be taken **from the person to whom the contract is awarded by the owner** and owner's representative jointly as determined by the owner" (emphasis added by MSSI) in § 52-118(4). MSSI also disputed J.E. Dunn on whether § 52-118 allows subcontractor to sue the general contractor for the payment bond. Citing *The Weitz Co., LLC v. Alberici Constructors, Inc.*, No. 8:08CV199, 2009 WL 115980 (D. Neb. 2009), MSSI argues this Court has previously allowed claims under § 52-118 to proceed against a general contractor. While the *Weitz* court denied the motion to dismiss on the claim seeking recovery on that bond, the denial was based on the sufficiency of allegations relating to conditions precedent/timeliness of the bond claim. There was no discussion regarding the availability of claims against the general contractor for the payment bond under § 52-118. The Court finds that MSSI did not sufficiently support its allegation that § 52-118 provided an avenue for MSSI to sue J.E. Dunn for the payment bond.

The federal rules require MSSI to plead more than "conclusory legal statements" to state a plausible claim. MSSI failed to sufficiently allege and show that this "Payment Bond" claim is the proper vehicle to recover the payment bond amount from J.E. Dunn.

4

Hence, MSSI failed to provide sufficient grounds for their entitlement to relief. *Twombly*, 550 U.S. at 555. (explaining the plaintiff needs to provide more than "labels and conclusions" for their entitlement to relief). The Court will grant the defendant's motion to dismiss the bond claim against J.E. Dunn.

### C. Tortious-Interference Claims Against J.E. Dunn and DLR Group

MSSI next alleges J.E. Dunn and DLR Group tortiously interfered with MSSI's contractual relationship with Cornerstone when they failed to ensure that MSSI could get fully paid by way of an adequate Payment Bond. In particular, MSSI faults them for concealing Payment Bond information and failing to obtain adequate Payment Bond.

"To succeed on a claim for tortious interference with a business relationship or expectancy, a plaintiff must prove (1) the existence of a valid business relationship or expectancy, (2) knowledge by the interferer of the relationship or expectancy, (3) an unjustified intentional act of interference on the part of the interferer, (4) proof that the interference caused the harm sustained, and (5) damage to the party whose relationship or expectancy was disrupted." *George Clift Enters., Inc. v. Oshkosh Feedyard Corp.*, 947 N.W.2d 510, 537 (Neb. 2020). "In order to be actionable, interference with a business relationship must be both intentional and unjustified." *Recio v. Evers*, 771 N.W.2d 121, 132 (Neb. 2009).

J.E. Dunn and DLR Group each argue MSSI has not sufficiently alleged acts of interference that caused harm and damage to the contractual relationship between MSSI and Cornerstone. The Court agrees.

MSSI has failed to identify an affirmative act of unjustified intentional interference because it did not sufficiently allege that J.E. Dunn and DLR Group intentionally concealed the Payment Bond information or prevented MSSI from claiming against the Payment Bond. Even if J.E. Dunn failed to provide the Payment Bond information in a timely manner, it does not rise to the level of tortious interference. As for DLR Group, it has an even more attenuated role in the contractual relationship between MSSI and Cornerstone. Therefore, MSSI has not alleged facts to show that the actions of J.E. Dunn and DLR Group

unjustifiably and intentionally interfered with the business relationship between MSSI and Cornerstone.

MSSI's allegation that J.E. Dunn and DLR Group tortiously interfered by failing to secure a sufficient Payment Bond for the project is also unsupported. Again, MSSI has not shown that § 52-118 creates a private right of action for bond insufficiency against a general contractor or another subcontractor. Even if it could, it is not clear how such violations would establish tortious interference. In short, MSSI fails to present any legal authority or anything else to bolster its personal opinion that failing to secure a sufficient payment bond amount according to a statute is a form of tortious interference.

Therefore, as MSSI failed to allege "an unjustified intentional act of interference on the part of the interferer," the tortious interference claim fails without further discussion on the other elements. *George Clift Enters., Inc.*, 947 N.W.2d at 537. This Court will grant J.E. Dunn's and DLR Group's motions to dismiss the tortious-interference claim.

### D. Breach-of-Fiduciary-Duty Claims Against J.E. Dunn and DLR Group

MSSI asserts claims for breach of fiduciary duty against J.E. Dunn and DLR Group. To recover on a breach-of-fiduciary-duty claim, a plaintiff must prove: (1) the defendant "owed it a fiduciary duty"; (2) the defendant "breached the duty"; (3) the "breach was the cause of the injury to the" plaintiff; and (4) the plaintiff was damaged. *McFadden Ranch, Inc. v. McFadden*, 807 N.W.2d 785, 790 (Neb. 2011). "The existence of a fiduciary duty and the scope of that duty are questions of law for a court to decide." *In re Est. of Forgey*, 906 N.W.2d 618, 631 (Neb. 2018). "A fiduciary duty arises out of a confidential relationship which exists when one party gains the confidence of the other and purports to act or advise with the other's interest in mind." *Gonzalez v. Union Pac. R.R.*, 803 N.W.2d 424, 446 (Neb. 2011). A fiduciary relationship arises when confidence is "reposed on one side and a resulting superiority and opportunity to influence are thereby created on the

6

other" side. *Id*. "But superiority of bargaining power alone does not create a fiduciary duty, because there must also be an opportunity to exercise undue influence." *Id*.

MSSI alleges J.E. Dunn and DLR Group breached the fiduciary duty when they failed to ensure that MSSI was fully and promptly paid. However, MSSI's claim that J.E. Dunn and DLR Group owed them a fiduciary duty is baseless. MSSI did not sufficiently allege J.E. Dunn and DLR Group gained its confidence to "act or advise with" MSSI's interest in mind.

Even though MSSI claimed that J.E. Dunn and DLR Group "knew about and consented to the hiring of MSSI," there were insufficient allegations to show that JE Dunn or DLR Group holds any power to influence the relationship between MSSI and Cornerstone. In particular, DLR Group's relationship with MSSI was too distant to owe fiduciary duty to MSSI given that there was no relationship between DLR Group and MSSI except that they are engaged by separate parties on the same project.

The Court finds MSSI failed to adequately plead any fiduciary relationship between MSSI and either J.E. Dunn or DLR Group. Without a duty, there cannot be a breach. Thus, the Court will grant the defendants' motions to dismiss the breach-of-fiduciary-duty claims.

IT IS ORDERED:
1. Defendant J.E. Dunn Construction Company's motion to dismiss (Filing No. 44) is granted.
2. Defendant DLR Group, Inc.'s motion to dismiss (Filing No. 41) is granted.
3. The claims against defendant J.E. Dunn Construction Company and DLR Group, Inc. are dismissed with prejudice.

Dated this 24th day of July 2023.

7

BY THE COURT:

Robert F. Rossiter, Jr.
Chief United States District Judge

8